# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4157-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.L.C.,

     Defendant,

and

T.J.G.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF L.R.J.,

     a Minor.

_____

Submitted January 13, 2020 - Decided January 31, 2020

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0050-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Jennifer M. Kurtz, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Alexa L. Makris, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd S. Wilson, Designated Counsel, on the brief).

PER CURIAM

In this Title 30 guardianship case, T.J.G.,[1] the father of L.R.J. ("Laurie"), appeals the Family Part's termination of parental rights. The Law Guardian and the Division of Child Protection and Permanency urge that we uphold the trial court's decision. We affirm, substantially for the sound reasons detailed in the twenty-seven-page written opinion that Judge Pamela D'Arcy issued on May 3, 2019 at the conclusion of the trial.

---

[1] We use initials and fictitious names to protect the identity of the parties. R. 1:38-3(d)(12).

Briefly stated, Laurie was removed by the Division shortly after her birth in February 2017. The mother, A.L.C.,[2] has persisting drug use problems and used drugs during her pregnancy. Her first child was removed by the Division in 2014 after the Division learned she had been in a violent relationship and failed to obtain any prenatal services. Eventually, the mother's parental rights to that older child were terminated due to her ongoing substance abuse, infrequent visitation, and refusal to utilize services offered to her. The older child was adopted by a resource family. Laurie was placed in that same resource home with her half-sister.

At first, the mother was unsure of the identity of Laurie's father. After the initial putative father of Laurie was ruled out, paternity testing ultimately revealed in July 2017 that appellant is her biological father.

At all times relevant to this case, appellant has been incarcerated and serving a ten-year custodial term for armed robbery. According to the parties' submissions, appellant is not scheduled to be considered for parole until 2015, when Laurie will be nine years old. He has never resided with Laurie or served

---

[2] The mother has not appealed the termination of her own parental rights to Laurie.

A-4157-18T1

as her caretaker. Meanwhile, Laurie has remained in the care of her resource parents, who reportedly wish to adopt her.

The Division presented testimony at trial from two caretakers and an expert psychologist, Dr. Alan J. Lee. The trial judge found all three witnesses to be credible. In particular, the judge noted that both caseworkers were "candid and responsive to all questioning" and "demonstrated a good recollection of their interactions with this family as well as . . . the Division file." As for Dr. Lee, the judge found his testimony "in accordance with sound psychological practices, utilizing generally accepted objective and subjective testing." The court also noted that Dr. Lee's "opinions and conclusions were well-supported by facts." Appellant did not testify and he presented no witnesses in his behalf.

Dr. Lee performed a psychological evaluation of appellant and diagnosed him as having personality disorder NOS[3] with antisocial, narcissistic and avoidant traits. In addition, Dr. Lee found appellant exhibits impulse control disorder NOS.

As summarized by the trial court, Dr. Lee opined that the prognosis for significant and lasting change by appellant is poor. The expert found appellant is unlikely to serve as an independent caretaker for Laurie within the foreseeable

---

[3] Not otherwise specified.

future, regardless of his incarceration. Dr. Lee advised that appellant would need to complete a lengthy set of services upon his eventual release from prison in order to attempt to become a minimally adequate parent, and that the earliest that release would occur would be the year 2025.

Dr. Lee also conducted a bonding evaluation. It revealed that Laurie has formed "a significant and positive psychological attachment" with both of her resource parents. By contrast, Dr. Lee noted that Laurie—who only met appellant for the first time in the course of the bonding evaluation—has no emotional ties to appellant and their attachment is insecure and insignificant. None of these credible opinions were rebutted by any competing expert testimony.

After considering the evidence, the trial judge concluded that all four prongs of the statutory criteria for termination under N.J.S.A. 30:4C-15.1(a)(1) through (4). In particular, the judge found the Division had established, by clear and convincing evidence, that: Laurie's safety, health, and development have been and will continue to be endangered as the result of appellant's failure to provide her with a safe and stable home, N.J.S.A. 30:4C-15.1(a)(1); appellant is unable or unwilling to eliminate that harm in the future and that a delay in Laurie's permanent placement will add to that harm. N.J.S.A. 30:4C-15.1(a)(1);

5

the Division made reasonable efforts to provide services to appellant and the mother, and potential alternatives to termination have been sufficiently considered, N.J.S.A. 30:4C-15.1(a)(3); and termination of parental rights will not cause Laurie more harm than good, N.J.S.A. 30:4C-15.1(a)(4).

As Judge D'Arcy summarized at the end of her opinion:

> Finally, [Laurie] is thriving in her resource home and is safe in her resource parents' care; Dr. Lee opined that [Laurie] has formed a rapid attachment with these caretakers and that her needs are being met. The resource parents offer a stable lifestyle for [Laurie], one that her natural parents have demonstrated they cannot offer now and will be unable to offer her in the foreseeable future. [Laurie] has no relationship with her biological parents and they are essentially strangers to her. This is a young child who needs permanency, and she deserves a chance to be adopted by her resource parents in the only home she has ever known.

Appellant contends in his brief that: the trial court unfairly evaluated his parental fitness stemming from his incarceration; the expert opinions of Dr. Lee (who the brief assails as the Division's "hired gun") were speculative; the court should have found that appellant is motivated and capable of becoming a fit parent; the Division failed to provide him and Laurie with reasonable services that could have enabled him to parent; the court erroneously ruled out other potential relatives as caretakers; and the bonding evaluation was skewed by the

6

Division's failure to arrange parenting time between Laurie and appellant. We have fully considered these contentions and conclude they are unavailing.

We must bear in mind that our scope of review in Title 30 guardianship cases is limited. In such cases, the trial court's findings generally should be upheld so long as they are supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). The court's decision should only be reversed or altered on appeal if its findings were "so wholly unsupportable as to result in a denial of justice." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004). We must give substantial deference to the trial judge's opportunity to have observed the witnesses first-hand and to evaluate their credibility. R.G., 217 N.J. at 552. We must also recognize the expertise of the Family Part, which repeatedly adjudicates cases brought by the Division under Title 9 and Title 30 involving the alleged abuse or neglect of children. See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

Applying these well-established principles, we uphold the trial judge's determinations and reject appellant's claims of reversible error. Only two of appellant's contentions warrant discussion. Both of them primarily affect prongs

three and four: (1) the issues relating to appellant's incarceration and (2) the rule-out of potential relatives as caretakers.

As to appellant's incarceration, we are satisfied the trial court did not terminate her parental rights solely because of his imprisonment.  Cf. In re Adoption of L.A.S., 134 N.J. 127 (1993) (disallowing such a per se approach to incarcerated parents).  The Division logically focused its attention upon attempts to assist Laurie's mother, who was not incarcerated, to provide Laurie with a safe and stable home.  If that placement had been successful it would have indirectly benefited appellant.  Unfortunately, the mother's ongoing drug addiction and non-compliance with services eliminated that possibility.

In the meantime, the record shows that a Division caseworker visited appellant monthly, consulted with prison staff and conducted a family team meeting with the prison social services director, and arranged psychological and bonding evaluations.

Appellant never lived with or had a relationship with Laurie before his imprisonment.  By the time he was identified through paternity testing to be her father, Laurie had already been living with her resource parents and half-sister for several months.  Although visitation at the jail did not occur, that was not unreasonable in light of appellant's violent criminal history, Laurie's young age,

and the absence of a previously established relationship. For all these reasons, we reject defendant's arguments concerning his incarcerated status.

Likewise, the Division's alleged inadequate consideration of alternative relative placements also does not compel reversal. We recognize that the Division has an obligation to conduct a reasonable investigation of relatives who have been identified as potential caretakers. See New Jersey Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 87 (App. Div. 2013). Initially, the Division reasonably believed that appellant's grandmother, D.G., had a criminal record that rendered her unsuitable. Ultimately, it came to light that the criminal offenses were those of D.G.'s sister. Thereafter, the Division assessed D.G. and ruled her out. D.G. administratively appealed that decision, and it was upheld, albeit apparently on "best interests" grounds.

D.G. filed a separate custody action with the Family Part under the "FD" non-dissolution docket. The motion was heard by the same judge who presided over this guardianship trial. During the hearing on that motion, D.G. acknowledged that Laurie had never met or lived with her. The hearing further revealed that the Division had previously investigated and substantiated allegations that D.G.'s son had sexually assaulted a foster child in her home, allegations which D.G. denied. D.G. admitted that her home had been rejected

for licensing purposes in 2009. The judge denied D.G.'s custody motion in the "FD" case as being contrary to Laurie's best interests, as compared with her stable placement with her half-sibling.

Given these circumstances, the Division and the trial court had a reasonable basis under prongs three and four to decline to place Laurie with D.G. Notably, the judge's custody decision in the "FD" case was not appealed. We decline to disturb that ruling here.

We also are unpersuaded that the court should have placed Laurie with appellant's own mother, M.S., who the Division ruled out after learning that she had a prior history with the Division. Even if that information about M.S. was incorrect or insufficiently detailed, the court had the discretion to favor the child's need for permanency over the proffered alternatives. See, e.g., In re Guardianship of J.C., 129 N.J. 1, 26 (1992) ("[C]hildren have an essential and overriding interest in stability and permanency."); J.S., 433 N.J. Super. at 88 (noting that a strong permanency interest is "especially" relevant to a decision ruling out an alternative placement with relatives).

In sum, even if the rule-out determinations could have been better handled or supported, the ultimate decision to continue Laurie's placement with the only caretakers she has had since birth was not unreasonable. In addition, we note as

a matter of general policy, the Family Part strives to place siblings and half-siblings in the same household when feasible and in the children's best interests. See, e.g., In re D.C., 203 N.J. 545, 563-66 (2010).

The other arguments raised by appellant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4157-18T1